UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY KENNEDY
Plaintiff

-against-

THE CITY OF NEW YORK;
N.Y.P.D. OFFICER JUAN RODRIGUEZ badge 10703;
N.Y.P.D. OFFICER JEFFREY HUNOLD badge 8378;
N.Y.P.D. SGT. JOSEPH PERAGALLO, 20th pct.
N.Y.P.D. OFFICERS DOE ONE - FIVE, not yet identifed.

Defendants

Index No. 07 cv 10622 (NRB)(DFE)

ECF Case

AMENDED COMPLAINT

A Jury Trial is Demanded

Plaintiff TIMOTHY KENNEDY by his attorneys, The Law Office of Ronald L. Kuby, brings this action to redress violations of his civil and legal rights under federal and New York State law, and alleges as follows:

## NATURE OF THE CASE

Plaintiff was falsely arrested by defendant NYPD officers and subjected to excessive force and maltreatment during the arrest, leading to hospital confinement of several days as well as continued physical and mental ill health.

## JURISDICTION

1. This Court has jurisdiction under 42 U.S.C.A. §1983

2. This court has jurisdiction over New York State causes of action herein stated under principles of pendant jurisdiction.

## VENUE

3. Venue in this District is proper under 28 U.S.C. §1391 in that defendant City of New York is administratively located within the Southern District of New York.

**NOTICE**

4. Notice to the City of New York pursuant to NY Gen. Mun. Law §50-e, was timely filed on August 1, 2007. No notice of a hearing pursuant to Gen. Mun. Law §50-h was served by defendants, and more than 90 days have elapsed since the notice of claim was filed.

**PARTIES**

5. Plaintiff was at all times relevant a citizen of the State of New York, with his permanent residence in New York County.

6. Defendant City of New York is and was at all times relevant a municipal corporation created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City of New York assumes the risks incidental to the hiring and training of police officers, as well as to the maintenance of a police force as said risk attaches to the public consumers of the services provided by members of the New York City Police Department. Defendant City of New York was at all times relevant the public employer of defendant police officers.

7. Defendant Police Officers were at all times relevant members of the New York City Police Department. Individually and in concert, while on duty as police officers, they caused the injuries complained of herein.

8. At all times relevant herein, the defendant officers were acting under color

of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Police Department.

**FACTS**

9. At approximately 4:30pm on May 29, 2007, Memorial Day, plaintiff entered the vestibule of his apartment house on West 82nd Street in Manhattan and felt the door being held open behind him.

10. Defendant NYPD officer Juan Rodriguez accosted him. Rodriguez said, in sum and substance, that he'd had a report of a naked man in the street, and he "wondered if it was him."

11. Plaintiff was fully dressed from head to toe, and so pointed out to the officer. Plaintiff, a clothing designer, has achieved a measure of renown in New York City for his dress: he invariably wears flowing garments of no specific gender reference, and a black skull cap.

12. Words ensued and the officer began writing a ticket for disorderly conduct.

13. Further words ensued. The officer pushed plaintiff against the wall, handcuffed him, and led him away to a patrol car around the corner.

14. Officers Rodriguez and Hunold placed him in the back seat of the car and locked the door. It was a particularly warm day, and well over 100 degree Fahrenheit in the car.

15. The other defendant officers arrived along, on information and belief, Sgt. Peragallo. From the back seat plaintiff heard them in discussion. He heard Officer Rodriguez say "the fucking faggot closed the door on me. I'm not letting him get away

with it."

16. Plaintiff grew faint and unable to breathe. He slumped to a reclining position on the seat.

17. After some forty minutes an officer opened the door and asked if he was alright. He replied that couldn't breathe.

18. The officer closed the door again.

19. After about twenty additional minutes plaintiff could no longer sit up, was gasping for breath, and was fighting to remain conscious.

20. The officers drove him to St. Lukes-Roosevelt Hospital. Hospital records indicate he arrived in seizure. The officers reported they had found him wandering the streets disoriented, dressed only in underwear.

21. Plaintiff remained in the hospital for three days, undergoing tests, including painful spinal taps, to determine the cause of his collapse or seizure.

22. Since his release he has required treatment on several occasions, including another hospital stay, for medical conditions directly related to the conduct of defendant officers.

23. He has lost income and employment as a result of defendants' misconduct.

24. During plaintiff's manhandling and arrest, jewelry and clothing valued at several thousand dollars, including a museum-quality ring, were damaged.

25. No criminal charges were filed.

**CAUSES OF ACTION**

26. Plaintiff incorporates by reference every fact allegation in this Complaint

as if fully set forth in every Cause of Action hereunder.

**FIRST:**
**42 USC §1983 DEPRIVATION OF CIVIL RIGHTS**
**FALSE ARREST**

27. Defendant police officers arrested plaintiff without reasonable cause or justification, in violation of his constitutional rights.

**SECOND:**
**42 USC §1983 DEPRIVATION OF CIVIL RIGHTS**
**EXCESSIVE FORCE**

28. Defendants confined the plaintiff, handcuffed, in the back seat of a closed automobile with interior temperatures well in excess of 100 degrees F., in violation of his constitutional right not to be subjected to excessive force during arrest.

**THIRD:**
**42 USC §1983 DEPRIVATION OF CIVIL RIGHTS**
**DELIBERATE INDIFFERENCE TO MEDICAL NEED**

29. Defendant police officers observed and knew that plaintiff in their custody was in severe medical difficulty and pain, yet they deliberately withheld medical attention for over an hour.

**FOURTH:**
**LIABILITY OF DEFENDANT CITY OF NEW YORK FOR CIVIL RIGHTS VIOLATIONS**

30. Defendant police officers' conduct was a direct consequence of policies and practices of the New York City Police Department and New York City.

**FIFTH:**
**ASSAULT AND BATTERY**

31. Defendant police officers placed plaintiff in immediate fear of harm, and

hostilely touched him without his consent. Their conduct was not privileged.

**<u>SIXTH</u>:**
**FALSE ARREST AND IMPRISONMENT UNDER STATE LAW**

32. Defendants did not have reasonable cause to arrest plaintiff. His detention for over an hour constitutes unjustified imprisonment.

**<u>SEVENTH</u>:**
**FAILURE TO TRAIN AND SUPERVISE - MISCONDUCT**

33. The misconduct of defendant police officers was a direct result of City of New York's and its police department's failure to properly train them and to supervise their activities.

**<u>EIGHTH</u>:**
**FAILURE TO TRAIN AND SUPERVISE – BIAS**

34. The mistreatment of plaintiff by defendant police officers was a direct result of their bias against homosexuals, a bias encouraged by the failure of NYPD officials to institute effective training and supervision procedures to counter such bias.

**<u>NINTH</u>:**
**WILLFUL, RECKLESS, AND NEGLIGENT INFLICTION OF PHYSICAL INJURY UNDER STATE LAW**

35. Defendants breached their duty not to unreasonably and unjustifiable interfere with the person of plaintiff. They knew or should have known that their conduct in exposing him to excessive heat for a prolonged period would result in injury to his person.

**<u>TENTH</u>:**
**WILLFUL, RECKLESS, AND NEGLIGENT INFLICTION OF EMOTIONAL PAIN AND SUFFERING UNDER STATE LAW**

36. Defendant police officers exposed plaintiff's to excessive heat for a

prolonged period in order to punish or abuse him, inflicting grave psychological and emotional pain. Their conduct was shocking, outrageous and beyond the bounds of civilized behavior.

**ELEVENTH:**
**DAMAGE TO PROPERTY**

37. Property of plaintiff's valued at several thousand dollars, including clothing and jewelry, was damaged and reduced in value by defendant police officers.

**TWELFTH:**
***RESPONDEAT SUPERIOR* LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS**

38. The misconduct of defendant police officers occurred while they were on duty and in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents, officers, servants and employees of the defendant City of New York. The injuries and damage complained of herein are attributable to defendant City of New York under the doctrine of *Respondeat Superior*.

WHEREFORE, plaintiff demands the following relief jointly and severally against all defendants:

A. Injunctive relief, in that this Court should compel defendant City of New York to control illegal conduct among its police officers.

B. Declaratory relief in that this Court should declare that the conduct of the defendants herein violated plaintiff's constitutional rights;

C. Compensatory damages;

D. Punitive damages;

E. Costs and interest and attorney's fees;

F. Such other and further relief as this court may deem appropriate and equitable in the interests of justice.

Dated: New York, New York
March 31, 2008

/s/

George Wachtel [GW5921]
Law Office of Ronald L. Kuby
119 West 23st., Suite 900
New York, NY 10011
(212) 529-0223

**VERIFICATION**

STATE OF NEW YORK :
:ss.:
COUNTY OF NEW YORK :

Timothy Kennedy, plaintiff herein, being duly sworn, deposes and says as follows: I have read the above complaint and it is true, except as to those parts identified as on information and belief, and as to those I believe them to be true.

/s/
Timothy Kennedy

Sworn to before me this March 31, 2008

ACKNOWLEDGED IN ORIGINAL